Superior Court of Cincinnati.

### CHAS. C. PENNINGTON v. THE FOURTH NATIONAL BANK OF CINCINNATI.

Decided, September 27, 1911.

*Alimony—Nature of a Judgment for—Where the Defendant is a Non-Resident Having Property Within the Jurisdiction—Actions in Personam and in Rem.*

A judgment for alimony and costs may be enforced against personal property of a non-resident, within the territorial jurisdiction of the court and under its control, notwithstanding he was served with summons by publication and no personal service was thereafter obtained upon him, and he did not enter an appearance in the action in which the decree was rendered.

*Mallon & Vordenberg,* for plaintiff.
*W. S. Little,* contra.

SPIEGEL, J.

The plaintiff sues the defendant for the payment of $1,347.54, which he claims to have had on deposit with the defendant on September 1, 1908, against which amount he drew a check, payment of which was refused by the bank.

The bank defends by alleging as follows:

"This defendant further says that on or about the 4th day of September, 1908, one Clara M. Pennington commenced an action in the Court of Common Pleas of Hamilton County, Ohio,

against the plaintiff, Chas. C. Pennington, and this defendant, being cause No. 140831, wherein she prayed for a divorce, alimony, custody of children, injunction, and for all proper relief; that on or about the 4th day of September, 1908, this defendant was served with summons in said cause, and with an order restraining it from paying out any money which it held belonging to the plaintiff, Charles C. Pennington; that on or about the 10th day of September, 1908, this defendant filed its answer in said cause stating that it had an account upon its books in the name of Charles C. Pennington, with a credit balance of fourteen hundred and forty-five dollars and seventeen cents; that this defendant from time to time, during the pendency of said cause, by order of said court of common pleas, paid from said credit balance certain sums of money, amounting in all to five hundred and fifty dollars; that during the January term, 1909, of said court, a final decree was entered, ordering among other things that the plaintiff herein 'be forever divested of all and every claim, title or interest to the said sum of fourteen hundred and forty-five dollars and seventeen cents in possession of said bank,' and this defendant was perpetually enjoined from paying any part of said sum, on the order of Charles C. Pennington, and this defendant was ordered by said court to pay the balance of said money, eight hundred and ninety-five dollars and seventeen cents to Clara M. Pennington, or to Eugene C. Pociey, her attorney, on account of alimony and attorney's fees, therein decreed; and that this defendant in compliance with said order of court, paid said balance of money, as in said order provided."

Plaintiff replies by admitting the facts stated by the defendant, but denies the validity of the orders and judgment of the court of common pleas, because no personal service was had upon him, service being made by publication only.

To this reply the defendant has filed a demurrer, and the case at bar must be determined upon this question of law.

Plaintiff relies upon the doctrine generally stated by text-writers on divorce and alimony, as well as by encyclopedias of law, that, as the obligation of a husband to support his wife is personal, a decree of alimony against a non-resident defendant is *in personam* and, therefore, void if the husband has not appeared either in person or by attorney, or has been personally served with process within the territorial jurisdiction of the

court, citing Bishop on Marriage and Divorce, and *Encyclopedia of Law and Procedure,* better known as Cyc.

Counsel, however, does an injustice both to Mr. Bishop and to Mr. Gilbert, the author of the article on "Divorce," in Cyc. The distinction is well recognized in Ohio, and the majority of the states, that an action for divorce and alimony, where there is property within the territorial jurisdiction of the court, is both an action *in personam* and *in rem*, and is quite different from a real action, which involves real estate only.

I say this because counsel for plaintiff seems to draw an inference from the fact that the decisions rendered by the courts against absent husbands concerning property rights within their jurisdiction in proper alimony proceedings were always in reference to real estate, and, therefore, not applicable to money. bank deposits or other goods. This can not be a proper deduction, for as an action *in personam* means a suit against a person. so an action *in rem* means a suit against a thing, no matter of what kind, so long as it is tangible and may be seized under proper process of court.

Counsel for plaintiff further relies upon the case of *Massey* v. *Stimmel,* 5 O. N. P. R., 29, and 15 O. C. C. R., 439, wherein, in a former suit, a decree for alimony had been awarded, although there was no tangible property within the territorial jurisdiction of the court, which decree was set aside in the two cases cited. But the case at bar presents no such question.

It is admitted that in the original divorce and alimony suit the wife prayed for divorce and an order for temporary and final alimony out of the proceeds of the present plaintiff's bank deposit, asking that he be restrained from disposing of it. The court granted the injunction and disposed of the deposit by allowing it to the wife for her and her children's support by both temporary and final decree.

That this action of the court of common pleas was jurisdictional is fully sustained by our Supreme Court in the case of *Benner* v. *Benner,* 63 O. S., 220, wherein the syllabus is as follows:

"Service by publication is authorized by Section 5048 of the Revised Statutes, in an action by a wife for alimony and sup-

port of her child against the husband who deserted his family and became a non-resident of the state, where the only relief sought is the appropriation of real property, of the husband, situated in the county where the action is brought, to the payment of the amount that should be allowed for such alimony and support. Such an action is substantially one *in rem*, and the court has jurisdiction at its commencement to grant a preliminary injunction preventing the disposition of the property by the defendant pending the suit, and on the completion of the service by publication to decree the relief sought."

And, citing from the body of the decision, the rule of procedure is laid down as follows:

"Finally it is insisted that, though the action be *in rem*, the property was not by any process so brought within the control of the court, as was necessary to warrant the judgment rendered. The rule on this subject and the reason for it are stated in *Pennoyer* v. *Neff*, 95 U. S., 714, where it is said that 'Substituted service by publication, or any other authorized form, may be sufficient to inform parties of the object of the proceeding taken where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizures for its condemnation and sale.'

"It is not enough that property may be discovered and reached on execution after the judgment is rendered. Control of the property by the court before the rendition of the judgment is essential to the jurisdiction to render it; and if rendered without such jurisdiction it can not be made valid by the subsequent seizure of property of the defendant.

"But, we do not understand it is necessary, in order to bring the property under the control of the court, that it shall be actually taken on attachment or other writ. Any authorized act by which the court takes charge of property, or asserts its control over it, is sufficient, within the meaning of the rule, for the purpose of jurisdiction. And though injunction was not the ultimate relief sought for by the plaintiff in her action the preliminary injunction granted her at its commencement, restraining all disposition of the property by the defendant, would be as effectual to apprise him that it was in the custody of the court, as an actual seizure of it on writ. The judgment ren-

dered was made operative only on the property so brought within the control of the court at the beginning of the suit. and is not, in our opinion, void for want of jurisdiction.'' * * *

In conclusion I desire to cite Professor Minor, ''Conflict of Laws,'' who lays down the general rule, governing this decision:

''With regard to so much of the decree as relates to the costs of the suit and alimony to the wife, it is to be observed that, so far as the court undertakes to decree against the defendant for a sum of money, the decree is a proceeding *in personam*. It seeks to fasten upon the defendant a general pecuniary liability. Hence, as in the case of other proceedings *in personam,* no exterritorial force will be given the court's decree in this respect. unless the defendant is within the court's jurisdiction, either by voluntary appearance or by personal service of process there. But, if a defendant is a non-resident it is proper, even upon an order of publication, without personal service or appearance to provide for the seizure and appropriation of the defendant's property within the state to make good the costs or alimony decree, for to the extent of the property thus seized the decree would cease to be *in personam,* and would become a decree *in rem.* But any part of the personal liability imposed by the decree in excess of the value of such property, would still be *in personam* only and must conform to the requirements for such proceedings, touching the notice to be given the defendant, or else it will be void both exterritorial and intra-territorial.''

The demurrer. therefore, is sustained, and a final decree may, be taken accordingly.